UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**MARK LOUIS JOHNSON**,                    Case No. 6:15-cv-00509-KI

                Plaintiff,            OPINION AND ORDER

     v.

**CAROLYN W. COLVIN, Acting
Commissioner of Social Security**,

                Defendant.


      Kathryn Tassinari
      Robert Baron
      Harder, Wells, Baron & Manning, P.C.
      474 Willamette, Suite 200
      Eugene, OR 97401

            Attorneys for Plaintiff

      Billy J. Williams
      United States Attorney
      District of Oregon

Page 1 - OPINION AND ORDER

Janice E. Hebert
Assistant United States Attorney
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902

John C. Lamont
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Ave., Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Mark L. Johnson brings this action pursuant to section 205(g) of the Social

Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the

Commissioner denying his applications for disability insurance benefits ("DIB") and

supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

Johnson filed applications for DIB and SSI on August 31, 2010, alleging disability

beginning February 6, 2009. The applications were denied initially and upon reconsideration.

After a timely request for a hearing, Johnson, represented by counsel, appeared and testified

before an Administrative Law Judge ("ALJ") on December 5, 2012 and again on May 1, 2013.

On May 24, 2013, the ALJ issued a decision finding Johnson was not disabled within the

meaning of the Act and therefore not entitled to benefits. This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on

January 22, 2015.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c). If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) and 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past. If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. *Parra*, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  *Id.* (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  *Id.*

## THE ALJ'S DECISION

The ALJ identified Johnson's date last insured as December 31, 2014.  She found

Johnson had the following severe impairments:  chronic abdominal pain, obesity, diverticulitis,

status post sigmoid colectomy, calcific tendonitis of the shoulder, obstructive sleep apnea, type II

diabetes mellitus, umbilical hernia, pain disorder, and adjustment disorder with depressed mood.

The ALJ found these impairments, either singly or in combination, did not meet or medically

equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Appendix 1.

Given these impairments, the ALJ opined Johnson has the residual functional capacity

("RFC") to perform work with some limitations.  He can lift 20 pounds occasionally and 10

pounds frequently.  He can sit, stand and walk up to six hours each in an eight-hour day for a

combined total of eight hours of activity, but he requires the ability to sit or stand at will.  He is

able to reach overhead occasionally.  He cannot climb ladders, ropes, or scaffolds and he should

avoid exposure to workplace hazards, such as unprotected heights, unguarded dangerous

machinery, etc.  He can perform all other postural activities on at least a frequent basis.  He is

able to understand, remember, and carry out only simple instructions, and he should have no

public contact.

Given this RFC, the ALJ concluded Johnson could not perform his past work, but he could perform other work in the national economy including mold machine operator/attendant, blending tank helper, and marker.

## FACTS

Johnson was 48 years old on his alleged onset date of disability.  He has a GED and an associates degree in computer programming.  After being diagnosed with diverticulitis[1] in 2005, four years before his onset date of disability, Johnson had a partial bowel resection.  He was able to return to work, operating the garbage hauling business he had owned with his wife since 1996.

In February 2009, Johnson sought hospitalization for severe abdominal pain, complaining of pain over the past month.  A CT scan of the pelvis and abdomen revealed a partial small-bowel obstruction, mild diverticulosis, a fatty liver, and no evidence of diverticulitis or appendicitis.  He weighed 293 pounds.  Surgery was not recommended.  Johnson was given instructions to eat a high fiber diet and drink Metamucil and a lot of water.

He returned to the emergency room in March 2009.  A CT scan revealed no evidence of diverticulitis or other acute findings, but did note fatty infiltration of the liver and a small fat containing a periumbilical hernia.  Later that month, he sought medical attention when he fell from a ladder, twisting and hanging from his knee.  An MRI of the knee showed nonspecific knee effusion and very early degenerative changes in the medial and lateral menisci.

---

[1] "[I]nflammation or infection of a diverticulum of the colon that is marked by abdominal pain or tenderness often accompanied by fever, chills, and cramping[.]"  c.merriam-webster.com/medlineplus/diverticulitis (last visited Apr. 1, 2016).

A lumbar MRI in July revealed mild degenerative disc disease at the L3-4 and L4-5 levels.  The technician did not see any nerve root compromise and had "no explanation for the patient's symptoms."  Tr. 364.

Johnson's Type II diabetes was deemed uncontrolled in October 2009.  Johnson's medical care providers instructed Johnson to improve his diet and get more exercise.

Johnson met with a gastroenterologist, Lisa Ann Brandenburger, M.D., in November 2009, who noted the normal results from Johnson's colonoscopy and esophagogastroduodenoscopy (to examine the lining of the esophagus, stomach and duodenum) as well as the existence of a sliding hiatal hernia.  Johnson told Dr. Brandenburger the pain never went away without pain medication.  He slept in a chair at night because pain made it difficult to lie flat in bed.  He had stopped working in February 2009.  He smoked one to two packs of cigarettes a day.  Upon examination, Johnson's abdomen was diffusely tender.  Dr. Bradenburger opined that Johnson's pain "could be multifactorial.  I believe many of his [symptoms] to be related to his extreme central obesity."  Tr. 348.  She discussed evaluating him for sleep apnea, a gastric emptying study, and labs to work up the elevated alkaline phosphatase.  She also thought he ought to undergo a Cushing's syndrome work up.  She urged him to quit smoking "to show some commitment to making his health better and not solely rely on others[.]"  Tr. 348.

In January 2010, Johnson underwent a sleep study.  The staff physician directed Johnson to lose weight and quit smoking.  By February 2010, Johnson weighed 297.  He declined a referral to a weight loss program.  Johnson continued to describe feeling very uncomfortable with diffuse abdominal pain exacerbated by walking and eating.  He stated he felt "mentally clear."

Page 7 - OPINION AND ORDER

Tr. 319.  His provider recommended weight loss of 10 to 15 percent to start and progressive aerobic exercise.

Johnson was diagnosed with a postural tremor in both hands when holding objects.  The tremor was viewed as potentially related to diabetes.  He was urged to switch to non-caffeinated drinks and to quit smoking.  No follow up was necessary.

In June 2010, Johnson underwent a depression screening.  When asked whether he felt little interest or pleasure in doing things, he answered, "Not at all," and when asked whether he felt down, depressed or hopeless, he answered, "Not at all."  Tr. 312.  He reported his pain as 7 out of 10 in his abdomen, neck and shoulder.  His diabetes was still uncontrolled by July 2010. He planned to start Weight Watchers, keep a food journal, eat smaller meals, and start exercising. He reported abdominal pain made it difficult to exercise.  He had tried to walk/bike/Wii Fit, but got tired after several minutes.

Johnson obtained a CPAP in September, after being diagnosed with obstructive sleep apnea.  At his November appointment with his primary care provider, Sharon Stubbs, M.D., he reported ever-present pain.  He was taking gabapentin and oxycodone.  He weighed 293 pounds. Dr. Stubbs noted the pain was of unknown etiology, but thought it might be related to the previous abdominal surgery.  She highly encouraged weight loss and noted his fatty liver would improve with weight loss.  Johnson was working on cutting back smoking and was down to half a pack per day.  She wanted him evaluated for surgery.

By January 2011, Johnson's weight was 280.  At his surgical consultation, his abdomen was soft and very tender around the hernia.  The surgeon commented that Johnson's "pain

appears to be more severe and diffuse than would be expected from the ventral hernia. No other clear anatomic defects noted on CT." Tr. 593. He did not recommend surgery.

Dr. Stubbs noted in March 2011 that Johnson now had anorexia from pain and weight loss. He weighed 265 pounds. His abdomen was mildly tender to palpation. His pain was not improved with weight loss. Dr. Stubbs still encouraged continued weight loss.

Dr. Stubbs saw Johnson again in June, who had maintained his weight at 266. At that visit, he complained of shoulder pain and radiating pain from his groin. Dr. Stubbs ordered an x-ray, encouraged weight loss and regular exercise, ordered nicotine patches, and an ultrasound of his scrotum. When asked whether he had little interest or pleasure in doing things, he replied, "Not at all." Similarly, when asked whether he was feeling down, depressed, or hopeless, he replied, "Not at all." Tr. 796.

Johnson still complained of abdominal pain in October 2011. Dr. Stubbs continued Johnson on the chronic pain medications, including oxycodone, methadone, and gabapentin. She ordered inflammatory labs to see if he had lupus.

A social worker at the VA in November 2011 agreed to formulate a response to the Social Security Administration "in support of total disability" given that surgery was not an option and Johnson was considered a "'chronic pain' patient." Tr. 790. A month later, Dr. Stubbs wrote a letter "in support of your request for total disability." She reported the Portland VA's surgeon had concluded there was no surgical intervention for Johnson and, as a result, "we are left with a chronic situation that has left you, in my opinion, of being unable to work and therefore, permanently disabled." Tr. 567. She identified several specific functional restrictions.

In March 2012, Dr. Stubbs noted Johnson participated in no regular physical activity due to pain, he continued to smoke one pack per day, and he reported radiating pain into both hips with walking.  He weighed 272 pounds.  She encouraged weight loss and a home pain regimen.  At his May appointment, Johnson reported increasing pain in his lower back.  He had gained weight--back up to 282 pounds--when he attempted to stop smoking.  Dr. Stubbs replaced the methadone with morphine and encouraged weight loss.

Johnson began physical therapy for his lower back pain from the beginning of July to the end of August 2012.  It helped considerably with his lower back pain.  He started again in October, and when he returned he presented with a "very slow and ginger" gait.  Tr. 768.

Dr. Stubbs reported an x-ray of Johnson's right shoulder was normal and he was offered an injection, which he accepted.  Johnson weighed 253 pounds at his October 2012 appointment and was down to half a pack of cigarettes a day.  Dr. Stubbs continued to encourage him to reduce his caloric intake and increase his exercise.  She referred him to the NW Pain Center.  He "actually [felt] pretty decent" after a PT appointment later that month.  Tr. 763.

At the request of Johnson's attorney, Ron Lechnyr, Ph.D., examined Johnson in late October 2012 to assess whether he had any mental health issues.  The doctor identified several functional limitations.  After this appointment, Johnson told Dr. Stubbs that he had been diagnosed with depression and he wanted treatment.  She continued to recommend weight loss and referred him for mental health counseling.

At an appointment with VA's staff psychiatrist, Robert Higginbotham, MD, Johnson complained of low energy, decreased interests, poor sleep, and chronic pain.  He diagnosed depression NOS.  Johnson also met with a provider at the NW Pain Clinic, who assessed chronic,

diffuse lower abdominal pain without etiology, suspicion of surgical scar influence. Her treatment plan included a progressive walking program, pool walking, and tobacco cessation. She anticipated he would not make progress given his history of noncompliance and disability focus.

Johnson met with Jennifer Metheny, Ph.D., at the request of Disability Determination Services, in January 2013. She diagnosed Major Depressive Disorder, Panic Disorder, and identified several functional limitations.

An MRI of Johnson's lumbar spine in January 2013 revealed degenerative disc disease at L3-4 and L4-5 levels, and degenerative facet changes at L4-5 and L5-S1. Surgery was not recommended.

Johnson attended a mental health consultation through the VA in February 2013 and complained of depression and pain. He reported no problems with sleep. He put his pain at 7 out of 10. He rated his mood at 3 out of 10, with 0 being the worst. He displayed a full range of affect, he was very articulate, he was alert and oriented, he reported having problems with his recent memory and being easily distracted. The nurse practitioner diagnosed Johnson with an adjustment disorder with depressed mood. He began attending mental health counseling sessions.

At his May 2013 appointment with Dr. Stubbs, he weighed 268 pounds. Johnson was still taking gabapentin, morphine, and oxycodone. She recommended the ADA diet. In June, Johnson committed to improving his health with Tai Chi video at home, eating less carbohydrates, and restricting meats. He wished to improve his chronic pain and fatigue.

Johnson was taking a course to become a gun smith as of June 2013.  He rated his mood at 5 out of 10.

## DISCUSSION

Johnson challenges the ALJ's finding as to his credibility, as well as her treatment of his wife's lay witness report.  He also objects to the ALJ's handling of his treating doctor's opinion as well as her rejection of examining psychologist Dr. Lechnyr's opinion.

I.    Johnson's Credibility

Johnson testified that he stopped working due to the severe abdominal pain he experienced in February 2009.  He was taking oxycodone, morphine, and cyclobenzaprine for pain, diltiazem and trazodone for headaches, and medications for cholesterol.  He experienced sleepiness, loss of concentration, slow motor skills, and lack of motivation.  He measured his pain at seven and a half out of ten, even with medications.  He did not shop or do any chores around the house.  He spent his days sitting in his chair and standing watching television, then napping, eating dinner, and working on the computer.  He thought he could lift about 15 pounds, sit for 45 minutes to an hour, stand for an hour and a half, and walk for 15 minutes.  He thought if he could eliminate the pain in his abdomen, he could go back to work.  When the ALJ asked Johnson at the second hearing why he waited so long to seek mental health counseling, Johnson explained he had not perceived his symptoms as depression, he just thought he felt an inability to cope with the pain.

The ALJ found Johnson not entirely credible for several reasons, including the lack of objective medical evidence to explain his chronic abdominal pain and tremor, that he made

statements for purposes of treatment which contradicted statements he made for purposes of disability, and that he failed to comply with medical directives.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis.  In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).  The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom.  In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms.  *Id.*  The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient to support an adverse credibility determination and the ALJ must rely on substantial evidence.  *Id.*  "[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."  *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Johnson does not challenge the ALJ's reasoning with respect to his tremor and grip strength.  *See* Pl.'s Mem. 17 ("Plaintiff agrees that although he was diagnosed with a high frequency, low amplitude postural tremor in 2010, the tremor has not been recently observed by providers.").

Page 13 - OPINION AND ORDER

With respect to the inconsistent statements, the ALJ gave the example of Johnson's statement to his VA provider in 2012 that he "cooks most of the time for his family which includes young grandchildren." Tr. 813. In contrast, in the Function Report he filled out in support of his disability applications in 2010, Johnson indicated he could not stand or pay attention long enough to perform such activities. Johnson defends the difference by arguing his symptoms have varied over time, and that his medical record reflects he was limited in how long he could stand to prepare the meals. Regardless of Johnson's alternative interpretation of the evidence, the ALJ's interpretation that Johnson's statements about cooking contradicted his earlier statements that he was completely unable to perform any cooking was a rational one. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (inconsistent statements or less than candid statements are valid credibility indicators).

Additionally, and the more persuasive reason given by the ALJ, is that Johnson repeatedly denied any mental health symptoms until his attorney sent him for a psychological consultation in support of his disability applications. While the ALJ must proceed cautiously in questioning a claimant's failure to seek psychiatric treatment for a mental condition, *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996), here Johnson repeatedly denied having any *symptoms* associated with depression. Specifically, he repeatedly denied having lost interest or pleasure in doing things, and he repeatedly denied feeling down, depressed or hopeless, using the phrase "Not at all" in answer to both questions. Tr. 312, 796. The ALJ could rationally conclude that Johnson's explanation that he thought his problem was pain, rather than depression, was not a credible explanation given the timing of his reports.

Finally, although the ALJ cannot reject subjective pain testimony solely because it was not fully corroborated by objective medical evidence, medical evidence is still a relevant factor in determining the severity of the pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, no medical evidence supported Johnson's need to spend his days in a recliner or lying down. To the contrary, his medical providers repeatedly urged exercise, diet changes, and weight loss to improve his conditions. Again, although Johnson gives an alternative reading of the evidence--he had difficulty exercising, could not tolerate physical therapy, and needed to recline to relieve pain--the ALJ's interpretation of the record that there was no objective medical evidence to support the need for his lack of activity is just as rational. *Molina*, 674 F.3d at 1110 (court must uphold the ALJ's findings if they "are supported by inferences reasonably drawn from the record[,]" even if the evidence is susceptible to multiple rational interpretations). The ALJ did not err.

II.    <u>Lay Witness</u>

Andrea Johnson, Johnson's wife, reported on her husband's limitations. She described him as being in constant pain, with walking and sitting limitations, spending most of his time in his chair. She did concede that although she performs most of the chores, Johnson helped when he could. She reminded Johnson to take his pills. She reported that Johnson could clean, perform household repairs, and mow, although it took longer than usual because he needed to rest. He prepared his own lunch. The ALJ noted that Mrs. Johnson "described the claimant as more active around the home than he had alleged." Tr. 33. The ALJ rejected Mrs. Johnson's statements about hand limitations since there was no objective medical evidence to support such limitations, and concluded the RFC accommodated Johnson's limitations.

Page 15 - OPINION AND ORDER

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless he gives reasons for the rejection that are germane to each witness. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006).

Johnson argues the ALJ gave no reason for rejecting Mrs. Johnson's observations. However, since the ALJ properly addressed and rejected Johnson's testimony regarding the intensity and persistence of his limitations, and since Mrs. Johnson did not identify any limitations beyond those Johnson himself described, any error the ALJ made was harmless. *Molina*, 674 F.3d at 1122 (ALJ's failure to discuss testimony "inconsequential to ultimate disability determination in the context of the record as a whole").

III.    <u>Medical Evidence</u>

Johnson alleges the ALJ erred in her analysis of his treating doctor's opinion as well as the examining psychiatrist's opinion.  The weight given to the opinion of a physician depends on whether the physician is a treating physician, an examining physician, or a nonexamining physician.  More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).  If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons.  *Id.* (treating physician); *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if it is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn*, 495 F.3d at 632; *Widmark*, 454 F.3d at 1066.  The opinion of a nonexamining physician, by

itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark*, 454 F.3d at 1066 n.2.

    A.    <u>Dr. Stubbs</u>

Dr. Stubbs completed a function report in December 2011 in which she opined that because of Johnson's chronic abdominal pain, he was unable to work and permanently disabled. She more specifically opined that Johnson could lift 20 pounds, stand 15-20 minutes (with a 30 minute rest), sit one hour (with 15 minutes of moving around), and could not push or pull due to pain. In addition, the doctor concluded Johnson could not tolerate vibration, fumes, odors, dusts, or poor ventilation, due to his gastrointestinal issues.

Since her opinion was contradicted by the state agency physicians, the ALJ was required to give specific and legitimate reasons for giving less weight to Dr. Stubbs' opinion. The ALJ concluded Dr. Stubbs based her opinion on Johnson's complaints and self-reported limitations, rather than on objective findings. The ALJ also questioned the prohibition on exposure to fumes, odors, dust, etc., finding such a limitation unrelated to Johnson's chronic abdominal pain.[2]

Johnson argues that Dr. Stubbs' opinion must be read in conjunction with the medical record. In the medical record, Dr. Stubbs suggested Johnson's abdominal pain may be related to his history of diverticulosis and prior surgery, she noted his hernia and poorly controlled diabetes, as well as his fused sacroiliac joint. Tr. 751. With respect to the ALJ's criticism

---

    [2] The Commissioner's reliance on the social worker's promise to "formulat[e] a response to SSA, in support of total disability" was not a reason given by the ALJ and will not be considered here. Tr. 570. The court cannot "affirm the decision of an agency on a ground that the agency did not invoke in making its decision." *Stout*, 454 F.3d at 1054 (internal quotation omitted).

regarding Dr. Stubbs' prohibition of fumes, dust, odors, etc. due to abdominal issues, Johnson

argues the ALJ is unqualified to make such a finding.

As the Commissioner points out, Dr. Stubbs could provide no explanation for Johnson's

pain.  In fact, at the appointment just prior to the date of her letter, Dr. Stubbs noted an extensive

work up had been nondiagnostic.  Further, upon examination, Johnson disclosed only mild

tenderness and some loss of range of motion.  So, while everyone, including the ALJ, may agree

Johnson suffered from chronic abdominal pain, none of Dr. Stubbs' treatment notes disclose any

basis for her standing, walking, sitting or lifting restrictions.  In fact, she repeatedly urged

Johnson to exercise and lose weight.  The ALJ was permitted, then, to conclude Dr. Stubbs relied

on Johnson's self-proclaimed limitations.  *Tommasetti*, 533 F.3d at 1041 (a physician's opinion

of disability may be rejected if it is "based to a large extent on a claimant's self-reports that have

been properly discounted as incredible"); *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)

(permissible to reject check-off reports from physicians that do not contain any explanation of the

bases for the conclusions).  The ALJ did not err.

B.    Dr. Lechnyr

Dr. Lechnyr examined Johnson in October 2012 at the request of Johnson's attorney.  Dr.

Lechnyr commented that Johnson could understand and remember instructions, but had marked

impairment in sustaining concentration and attention, and in sustaining persistence.  Johnson

completed a number of depression and anxiety questionnaires, as well as a pain questionnaire.

Dr. Lechnyr opined that the results indicated Johnson demonstrated a real pain problem that was

aggravated by his emotional response, such as frustration with his limitations.  The doctor

considered Johnson presently disabled and unable to work.  He completed a function by function

assessment, including opinions about Johnson's limitations as a result of both psychological and physical impairments.

The ALJ gave no weight to Dr. Lechnyr's opinions about Johnson's physical problems as such opinions were outside his area of expertise.  She considered the doctor's diagnosis of generalized anxiety disorder to be inconsistent with the medical evidence in that Johnson did not complain about mental health problems before meeting Dr. Lechnyr, the doctor's opinion was based on a one-time examination, and none of Johnson's VA providers identified anxiety as an issue.  The ALJ also noted the lack of objective findings supporting the doctor's opinion.  For example, the doctor suggested Johnson had impairments in attention and concentration, but did not use any objective measurements to test Johnson's attention and concentration deficits.  Further, Johnson demonstrated no deficits in that area when Dr. Metheny tested him.  Additionally, Johnson inconsistently reported symptoms to Dr. Metheny and to his VA providers, as compared with Dr. Lechnyr.  Overall, the ALJ was suspicious of Dr. Lechnyr's participation given that Johnson had not alleged any mental health problems prior to meeting with this doctor, who was chosen by Johnson's attorney.

Johnson concedes the ALJ was not required to accept the doctor's findings with respect to Johnson's physical limitations.  He does argue, however, that the ALJ was not permitted to consider this reason as a means of questioning the validity of the doctor's opinions on Johnson's psychological condition.  There is no indication in the ALJ's opinion that she did.

I agree with Johnson that a single examination is not a reason to question the persuasiveness of an opinion, particularly where the ALJ relied on Dr. Metheny's opinion (who also examined Johnson only once) and the agency's consulting physicians (who did not examine

Page 19 - OPINION AND ORDER

Johnson at all).  Nevertheless, the remaining reasons are specific and legitimate and are supported by substantial evidence in the record.

With respect to the doctor's diagnoses, Johnson points out that Dr. Lechnyr diagnosed Major Depressive Disorder, a diagnosis that Dr. Metheny also diagnosed Johnson as having. Johnson agrees that while "the diagnoses themselves do not lead inexorably to certain limitations, the fact that both psychologists diagnosed major depression indicates Mr. Johnson is more impaired by depression that would be indicated by an 'adjustment disorder.'"  Pl.'s Op. Mem. 14.  In the end, however, Johnson cannot demonstrate how the ALJ's decision was affected by accepting the impairment of adjustment disorder rather than Major Depressive Disorder.  The ALJ rejected the functional limitations identified by Dr. Lechnyr and gave some weight to those identified by Dr. Metheny.  Consistent with Dr. Metheny's opinion, the ALJ limited Johnson to jobs requiring the ability to understand, remember and carry out only simple instructions, and she excluded jobs requiring contact with the public.  Contrary to Dr. Metheny's opinion, the ALJ found Johnson could interact with supervisors and co-workers, and respond appropriately to usual work situations and changes in routine, since Dr. Metheny herself indicated she relied on Johnson's self-reports.  The ALJ's conclusion is supported by substantial evidence in the record and there is no basis to conclude replacing adjustment disorder with Major Depressive Disorder would have changed the analysis.

As in her assessment of Johnson's credibility, the ALJ questioned Johnson's reports of anxiety and depression, and Dr. Lechnyr's diagnoses of these impairments, when Johnson had

Page 20 - OPINION AND ORDER

not indicated problems in these areas to his VA providers.[3]  Johnson explains that he had not

sought treatment because he thought his problem was pain-related, rather than due to depression.

However, since Johnson categorically denied feeling any symptoms associated with depression

when meeting with his treating providers, the ALJ rationally concluded Johnson's reports of

depression appeared to be in support of his disability applications rather than for purposes of

treatment.  Tr. 312, 796 (responded to VA providers "not at all" when asked if felt hopeless );

700 (reported "sense of hopelessness" to Dr. Lechnyr).  As for anxiety, when Johnson met with a

VA staff psychiatrist in December 2012, he did not mention panic attacks and Dr. Higginbotham

gave a diagnosis of only "Depression, nos."  Tr. 810.  Thus, the ALJ's conclusion that Johnson's

VA providers "did not see sufficient signs of anxiety to maintain the diagnosis as an active

problem" is a specific and legitimate reason, supported by substantial evidence in the record, to

question Dr. Lechnyr's opinion.

  Finally, the ALJ's conclusion that mental status testing did not support Dr. Lechnyr's

opinions about Johnson's attention and concentration deficits was a specific and legitimate

reason to question Dr. Lechnyr's opinion.  Dr. Metheny administered several tests to evaluate

Johnson's attention and concentration, while Dr. Lechnyr did not explain how he came to his

conclusions.  I do not consider the Commissioner's argument that the pain questionnaire used by

Dr. Lechnyr was not an objective testing method as that was not an argument proffered by the

---

   [3]I agree with Johnson that his reporting to Dr. Lechnyr and to Dr. Metheny was
consistent.  Thus, the ALJ's conclusion to the contrary is not a specific and legitimate reason to
support the weight she gave Dr. Lechnyr's opinion.  Nevertheless, sufficient reasons remain to
render her analysis valid.

ALJ.  Regardless, the ALJ's interpretation of the evidence was reasonable and supported by the evidence.  The ALJ did not err.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards.  For these reasons, the court affirms the decision of the Commissioner.


IT IS SO ORDERED.

DATED this ___7th___ day of April, 2016.


   /s/ Garr M. King_____
Garr M. King
United States District Judge